UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

ESTATE OF THERESA FROHNHOEFER,

          Plaintiff,

  -against-                                  **OPINION AND ORDER**
                                              06-CV-1236 (SJF)

MICHAEL LEAVITT, SECRETARY OF THE
DEPARTMENT OF HEALTH AND HUMAN SERVICES,

          Defendant.
----------------------------------------------------------X
FEUERSTEIN, J.

I.     Introduction

     Plaintiff, the Estate of Theresa Frohnhoefer ("Plaintiff"), appeals the final determination of the defendant, Michael O. Leavitt, Secretary of the United States Department of Health and Human Services (the "Secretary"), denying Medicare coverage for care provided to beneficiary Theresa Frohnhoefer (the "Beneficiary" or "Frohnhoefer"). The Secretary now moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). For the reasons set forth below, the Secretary's motion is granted.

II.    Statutory and Regulatory Background

     A.    The Medicare Program

     The Medicare program, established under Title XVIII of the Social Security Act (commonly known as the Medicare Act, codified at 42 U.S.C. § 1395 *et seq*.), pays for covered medical care to eligible elderly and disabled persons. The Department of Health and Human

1

Services ("HHS"), through the Secretary, administers the Medicare program and has delegated this function to the Center for Medicare and Medicaid Services ("CMS").

Medicare "Part A," is a hospital insurance program covering inpatient care and certain post-hospital services including home health services furnished by a home health agency. 42 U.S.C. §§ 1395c-1395i-5. This case involves Part A payments to post-hospital skilled nursing facility ("SNF") care.

To receive Medicare coverage for post-hospital SNF care, the beneficiary must have been an inpatient in a qualifying hospital for at least three (3) consecutive calender days, not including the day of the discharge, and must have been discharged in or after the month he or she became eligible for Medicare. 42 C.F.R. § 409.30(a). Further, the beneficiary must be in need of post-hospital SNF care, be admitted to a SNF facility, and receive such care within thirty (30) days after the date of discharge from the hospital. 42 C.F.R. § 409.30(b)(1). Medicare benefits include coverage for up to one hundred (100) days of post-hospital extended care services during any spell of illness. 42 U.S.C. § 1395d(a)(2)(A).

For Medicare to pay the costs of post-hospital extended care services, a physician, nurse practitioner, or clinical nurse specialist must certify and recertify that such services are or were required because the individual needs daily skilled nursing and/or rehabilitative care for any condition for which the beneficiary received inpatient hospital services. 42 U.S.C. § 1395f(a)(2)(B). The initial certification must be obtained at the time of admission of the beneficiary into the SNF. 42 C.F.R. § 424.20(b)(1). An initial recertification is required within fourteen (14) days of post-hospital SNF care. 42 C.F.R. § 424.20(d)(1). Subsequent recertifications are required at least every thirty (30) days after the first recertification. 42 C.F.R.

§ 424.20(d)(2).

In general, covered skilled nursing or rehabilitative services are (1) ordered by a physician; (2) require the skills of technical or professional personnel; and (3) are furnished directly by, or under the supervision of, such personnel. 42 C.F.R. § 409.31(a). In addition, these services must be needed by the patient on a daily basis and "must be ones that, as a practical matter, can only be provided in a SNF, on an inpatient basis." 42 C.F.R. § 409.31(b).

The list of services that qualify as skilled nursing services includes: (1) intravenous or intramuscular injections or intravenous feeding; (2) tube and gastrotomy feeding; (3) aspiration; (4) insertion and replacement of catheters; (5) application of dressings; (6) treatment of widespread skin disorders; (7) physician ordered heat treatments; (8) administration of medical gases; and (9) rehabilitation such as bowel and bladder training programs. 42 C.F.R. § 409.33(b).

Medicare expressly excludes coverage items and services that are not medically reasonable and necessary, as well as "custodial services." 42 U.S.C. § 1395y(a)(1)(A), (9). Custodial care consists of care which does not satisfy the requirements for coverage as SNF care. 42 C.F.R. § 411.15(g). Personal care services that do not require the skills of qualified technical or professional personnel are not skilled services and therefore are not covered by Medicare. 42 C.F.R. § 411.15(d). Such personal care services include administration of oral medication; bathing and treatment of minor skin problems; assistance in dressing, eating and going to the toilet; and general supervision of previously taught exercises and assistance with walking. Id. These personal care services are considered custodial care and are generally not covered by Medicare. See 42 C.F.R. § 411.15(g). However, overall management and evaluation of a care

plan involving personal care services may constitute skilled services when, in light of the patient's condition, the aggregate of these services require the involvement of technical or professional personnel. 42 C.F.R. § 411.33(a)(1)(I). In addition, observations and assessment by a technical or professional person may constitute skilled service when such skills are required to identify the patient's need for modification of treatment or for additional procedures until his or her condition is stabilized. 42 C.F.R. § 409.33(a)(2).

Pursuant to the Medicare statute's "limitation on liability" provision, a beneficiary is not liable for services that are not covered by Medicare if he or she could not reasonably be expected to know that they were not covered. 42 C.F.R. § 1395pp(a). A beneficiary is considered to have known that the services were not covered if written notice has been given to the beneficiary or someone acting on his or her behalf, explaining that the services did not meet Medicare coverage guidelines. 42 C.F.R. § 411.404(b). This notice may be given by the fiscal intermediary[1] or the provider of services. 42 C.F.R. § 411.404(c).

B.   Appeals Process

The Medicare regulations provide for administrative review of a denial of a Part A claim, and then federal court review of the Secretary's final decision. 42 C.F.R. Part 405, Subpart G. After the Medicare fiscal intermediary has made an initial determination regarding coverage, the beneficiary is notified. 42 C.F.R. § 405.702. An individual who is dissatisfied with the initial determination may request reconsideration within sixty (60) days. 42 C.F.R. §§ 405.710(a),

---

[1] A fiscal intermediary, through its contract with CMS, administers the Medicare program. The fiscal intermediary makes payments for Medicare Part A claims, as well as rejects or adjusts claims for which it has determined that the services provided were not reasonable, medically necessary, properly provided, or the claim does not properly reflect the kind and amount of the services that were provided to the beneficiary. 42 C.F.R. §§ 421.3, 421.103(a).

405.711. After CMS has issued written notice of the reconsidered determination, an individual may submit a written request for a hearing before an Administrative Law Judge ("ALJ") if the amount in controversy is one hundred dollars ($100) or more. 42 C.F.R. §§ 405.720, 405.722. A party may request review of an ALJ decision by the Medicare Appeals Board ("MAC") of the HHS Department Appeals Board within sixty (60) days after the date he or she received notice of the hearing decision or dismissal. 42 C.F.R. § 405.724, 20 C.F.R. § 404.967. If the amount in controversy is one thousand dollars ($1000) or greater, a dissatisfied beneficiary or provider of services can seek federal court review of a MAC decision, or an ALJ decision if MAC declines to review the ALJ decision. 42 U.S.C. § 1395ff(b)(1)(E), 42 C.F.R. § 405.730.

III.    Factual Background

On October 23, 2000, Frohnhoefer, then ninety two (92) years old, was admitted to Eastern Long Island Hospital for injuries she suffered as a result of a fall in the bathroom of her home. She was treated and remained in the hospital until November 8, 2000, when she was transferred to San Simeon by the Sound ("San Simeon"), a skilled nursing facility. A.R. 311.[2] On December 13, 2000, San Simeon determined that Frohnhoefer reached her maximum potential for physical therapy and no longer needed rehabilitative services or a skilled nurse to evaluate and manage her skilled care plan. A.R. 37. Upon receipt of the notification that she no longer qualified for Medicare coverage, Frohnhoefer opted to have the charges for services, which she continued to receive, submitted to the fiscal intermediary for a Medicare decision. A.R. 38. On May 29, 2001, CMS denied coverage for Frohnhoefer's stay for the period December 14, 2000 through December 31, 2000. See A.R. 34-36, 347. Frohnhoefer remained at

---

[2] "A.R." refers to the administrative record.

5

San Simeon until her death on February 12, 2003.

On January 8, 2004, Plaintiff requested reconsideration of CMS' initial denial of coverage. A.R. 365. CMS reviewed Plaintiff's request and on February 26, 2004, upheld the denial of coverage for services provided on December 14, 2000 through December 31, 2000. A.R. 353-55. By letter and a hearing request form, Plaintiff requested a hearing before an ALJ for the period "December 14, 2000 through 100 days." A.R. 351-52. On December 1, 2004, a hearing was held and Plaintiff asserted that the period for which it should have received coverage was December 14, 2000 through February 15, 2001, not through December 31, 2000, as stated in the initial Medicare determination and reconsideration. See A.R. 374.

On February 14, 2005, the ALJ rendered a decision in which he determined that the skilled nursing services and supplies furnished to the Beneficiary during the period December 14, 2000 through December 31, 2000, did not meet the legal parameters of the Medicare regulations. See A.R. 28. Accordingly, the ALJ held that payment was not owed under Medicare Part A and that Plaintiff was financially liable. Id.

By letter dated April 7, 2005, Plaintiff requested that MAC review the decision of the ALJ. A.R. 20. On August 3, 2005, MAC issued a decision, for the period December 14, 2000 through February 15, 2001,[3] vacating the AJL's decision and remanding the case back to him for further proceedings, including a new decision in accordance with the Medicare regulations found in 42 C.F.R. §§ 409.20-409.27 and 42 C.F.R. §§ 409.30-409.36. A.R. 17-18.

On September 14, 2005, the ALJ heard the case again. The next day, the ALJ issued a

---

[3] MAC noted that the ALJ should have addressed this period in his decision. A.R. 18

decision in which he found that during the period December 14, 2000 through February 15, 2001, the Beneficiary did not require skilled nursing services in accordance with 42 C.F.R. §§ 409.20-409.27 and 42 C.F.R. §§ 409.30-409.36. A.R. 12-13. Accordingly, Plaintiff was not entitled to payment under Medicare Part A. A.R. 13. By letter dated November 15, 2005, Plaintiff requested that MAC review the decision of the ALJ. On January 18, 2006, MAC denied Plaintiff's request for review. The ALJ's decision stands as the final decision of the Secretary. On March 16, 2006, Plaintiff commenced the instant civil action.

IV. Standard of Review

A final decision by the Secretary of Health and Human Services as to Medicare coverage is conclusive if it is supported by substantial evidence. See Hurley v. Bowen, 857 F.2d 907, 912 (2d Cir. 1988); Friedman v. Secretary of Health & Human Serv., 819 F.2d 42, 44 (2d Cir. 1987). The Secretary's findings will be upheld if the supporting evidence is "more than a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). This "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. In assessing whether substantial evidence supports a decision by the Secretary a court is to review the record as a whole, looking at the evidence supporting the Secretary's position, as well as other evidence that detracts from it. Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990). "Where there is substantial evidence to support either position, the determination is one to be made by the factfinder." Id. (citing Schisler v. Bowen, 851 F.2d 43, 47 (2d Cir. 1988)).

A court's review of a Medicare claimant's need for skilled nursing care as opposed to custodial care is guided by two (2) principles. Friedman, 819 F.2d at 45. "First, the decision

7

should be based upon a common sense non-technical consideration of the patient's condition as a whole." Id. (citations omitted). "Second, the Social Security Act is to be liberally construed in favor of beneficiaries." Id. (citations omitted). Nevertheless, a claimant has the burden of proving entitlement to Medicare benefits. Id. (citations omitted).

V.      Analysis

The ALJ concluded that the Beneficiary did not require skilled nursing services from December 14, 2000 through February 15, 2001. On appeal, Plaintiff contends that the ALJ's determination that the Beneficiary did not require skilled nursing services is not supported by substantial evidence in the record and should be reversed. In support of its contention, Plaintiff advances two (2) arguments. First, Plaintiff contends that the medical testimony of Dr. Gerald Greenberg should not be given any weight. Second, Plaintiff contends that the Beneficiary was receiving skilled nursing care from the time of her admission to San Simeon through February 15, 2001.

        A.      Testimony of Dr. Greenberg

Dr. Greenberg testified that during the entire one hundred (100) days at issue the Beneficiary did not require skilled care and only required custodial services. According to Plaintiff, Dr. Greenberg testified that he believed that skilled care is defined as "those functions that require a nurse to be present, at least everyday, in order to evaluate the results of therapy . . . ." A.R. 381. Plaintiff contends that Dr. Greenberg's definition is not consistent with Medicare

regulations 42 C.F.R. § 409.31(a) through § 409.36.[4] The Court disagrees.

As mentioned above, in general, covered skilled nursing or rehabilitative services are (1) ordered by a physician; (2) require the skills of technical or professional personnel; and (3) are furnished directly by, or under the supervision of, such personnel. 42 C.F.R. § 409.31(a). In addition, these services must be needed by the patient on a daily basis and "must be ones that, as a practical matter, can only be provided in a SNF, on an inpatient basis." 42 C.F.R. § 409.31(b). Dr. Greenberg's definition, while not a technical recitation of the exact definition of skilled care, is certainly consistent with the definition found in the regulations.

Further, according to Plaintiff, Dr. Greenberg testified that, in his opinion, an evaluation of the Beneficiary's complaints of chest pains and/or chest tightness by a registered nurse and a cardiologist were examples of routine care. See A.R. 384-98. Plaintiff contends that this testimony directly contradicts Medicare regulation 42 C.F.R. § 409.31(a). The Court disagrees. The Beneficiary complained of chest pains over the course of one (1) day. This did not require skilled care as the notes in the record indicate that the pain was not cardiac in nature and the doctor did not order any kind of follow-up. A.R. 12, 386-87. Further, there was no care for this ailment provided on a daily basis pursuant to 42 C.F.R. § 409.31(b).

Plaintiff also contends that Dr. Greenberg should not have been comfortable providing a medical opinion regarding the type of care the Beneficiary was receiving throughout the entire period in question, because, according to Plaintiff, Dr. Greenberg testified that he did not read all of the nurses' notes in the file. See A.R. 394. The Court disagrees.

---

[4] Plaintiff refers to the regulations as 40 C.F.R. § 409.31(a) through § 409.36. Presumably, this was a typographical error on the part of Plaintiff as 40 C.F.R. § 409.31(a) through § 409.36 are regulations of the Environmental Protection Agency pertaining to the refining of liquid cane sugar.

Dr. Greenberg was not the Beneficiary's treating physician. He was an outside medical expert whose testimony was based on a review of the documentary evidence in the Beneficiary's record. Plaintiff did not call the Beneficiary's treating physician to testify nor did Plaintiff present any evidence contrary to Dr. Greenberg's testimony.

In rendering his decision, the ALJ stated that he had considered all of the evidence in the record and Dr. Greenberg's testimony. The ALJ's decision cites the appropriate statutory and regulatory authority. Given the circumstances, the ALJ did not err in partially relying on Dr. Greenberg's testimony. The testimony of Dr. Greenberg provided an explanation of why the Beneficiary's overall condition and needs were such that she was not receiving and did not need skilled nursing services. This conclusion is consistent with the statements in the nurses' notes and other medical records contained in the administrative record. "Thus, '[t]his is not a case in which the ALJ and reviewing physician reached a decision contrary to the uncontroverted medical testimony, or unsupported by other adequate acceptable evidence.'" Friedman, 819 F.2d at 45-46 (quoting Warncke v. Harris, 619 F.2d 412, 416 (5th Cir. 1980)).

B.   Services Received

Plaintiff contends the Beneficiary received skilled nursing care because the nurses' notes in the record reflect that the Beneficiary was being observed, assessed, and evaluated throughout the full one hundred (100) day period.

Medicare regulations provide that overall management and evaluation of a care plan or observation and assessment of a patient's changing condition may constitute skilled service. See 42 C.F.R. § 409.33(a). The management and evaluation of a care plan based on a physicians' orders constitutes skilled services when, due to the patient's physical or mental condition, the

10

activities require technical or professional personnel in order to meet the patient's needs, promote recovery, and ensure medical safety. 42 C.F.R. § 409.33(a)(1). Management of a care plan involving a variety of personal care services constitute skilled services only when, in view of the patient's conditions, the aggregate of those services require the involvement of technical or professional personnel. Id. Observation and assessment constitute skilled services when the skills of technical or professional persons are necessary to identify a patient's need for modification of treatment or for additional medical procedures until his or her condition is stabilized. 42 C.F.R. § 409.33(a)(2).

Here, the Beneficiary did not receive technical or professional services involving technical or professional personnel. On December 13, 2000, San Simeon determined that the Beneficiary was at her maximum potential, thus there was no further need for skilled nursing services. The nurses' and physicians' notes described the Beneficiary's condition as stable. Nevertheless, the Beneficiary continued to be monitored. Contrary to Plaintiff, the fact that the Beneficiary was monitored and notes were taken about her condition does not mean that she was receiving skilled nursing services. At a nursing home, nurses must evaluate and record observations about a resident whether or not that resident meets the Medicare guidelines, and under New York law, nurses are required to make notations every single day. A.R. 382-83. The notes consist primarily of observations of the Beneficiary's condition including vital signs, moods, alertness, movement, meals, toileting, and other issues related to her personal care. A.R. 274-92. These observations did not constitute skilled services since such observations were not

required in order to stabilize the Beneficiary or modify her treatment.[5] See Landa by Landa v. Shalala, 900 F. Supp. 628, 638 (E.D.N.Y. 1995) ("This type of assistance simply does not require the skills of technical or professional personnel in an inpatient facility."). The Beneficiary "received only routine care on a daily basis." Colino v. Sullivan, No. 89-2219, 1990 WL 310438, at *4 (E.D.N.Y. Nov. 8, 1990).

Upon discharge from the hospital, the Beneficiary was prescribed nine (9) different medications. A.R. 39. Dr. Greenberg testified that a patient on medication does not have to be observed everyday by a skilled nurse. Although Plaintiff contends that the dosage of the Beneficiary's medication was adjusted throughout the period in question, there is nothing in the record to indicate there was more than the usual need to be aware of adverse reactions or beneficial responses to the medications, which can be made by non-medical personnel. Further, there is no indication that the Beneficiary received intramuscular or intravenous medication. Medication by injection is one of the indicia of skilled care noted in the Medicare regulations. See 42 C.F.R. § 409.33(b).

Although the Beneficiary did experience rectal prolapse, treatment of this condition did not require daily skilled services. The Beneficiary was able to identify this condition herself as she was told by the nurses to inform them when the condition occurred. A.R. 115. Finally, the response to the Beneficiary's single complaint of chest pain did not rise to the level of skilled care and even if it did, it would not transform the care given the Beneficiary during entire period of December 14, 2000 through February 15, 2001 into skilled nursing care.

VI.   Conclusion

---

[5] In fact, during the period in question, the Beneficiary did not receive any of the services which the Medicare regulations define as skilled nursing services. See 42 C.F.R. § 409.33(b).

Plaintiff's arguments on appeal lack merit. The Court finds, based on the totality of the circumstances, that substantial evidence supports the Secretary's decision denying Medicare coverage. Accordingly, the Secretary's motion for judgment on the pleadings dismissing the case, is GRANTED. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.


S/sjf
Sandra J. Feuerstein
United States District Judge

Dated: March 19, 2007
Central Islip, New York

Copies:

John Martin Bigler
The Law Office of John M. Bigler
1421 Wantagh Avenue
Wantagh, NY 11793

Diane C. Leonardo Beckmann
Assistant U.S. Attorney
610 Federal Plaza
Central Islip, NY 11722